UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LINDA LACEY,

        Plaintiff,

v.                                              Case No. 16-C-1621

DR. KELLY O'BRIEN, *et al.*,

        Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Linda Lacey, an inmate currently serving a state prison sentence at Taycheedah Correctional Institution (TCI), filed this action under 42 U.S.C. § 1983, alleging that defendants Dr. Kelly O'Brien and Nurse Konnan were deliberately indifferent to her serious medical need when she suffered a stroke on August 10, 2016. This matter comes before the court on the defendants' motion for summary judgment. ECF No. 32. For the reasons stated below, the motion for summary judgment will be granted.

## LEGAL STANDARD

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit

evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted).

"The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is, fundamentally, "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003) (internal quotation mark omitted) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A court may properly enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## BACKGROUND

The following facts are undisputed for the purposes of this motion for summary judgment. Lacey has been an inmate at TCI since 2002. Pl.'s Proposed Findings of Fact (PPFOF) ¶¶1–2, ECF No. 40. While sitting in a common area at TCI on the evening of August 10, 2016, Lacey began experiencing dizziness, disorientation, tingling in her arms and hands, shortness of breath, slurred speech, blurry vision, chest pain, and a racing heart rate. *Id.* ¶ 3. Lacey had previously had a stroke, and she believed that her symptoms indicated that she was having another. *Id.* ¶¶ 4, 8.

A correctional officer noticed Lacey's condition and sent her directly to TCI's Health Service Unit (HSU). *Id.* ¶ 5. Upon arriving at the HSU, Lacey waited for approximately 20 minutes before

2

being seen by Nurse Konnan, at which time she conveyed to Nurse Konnan her belief that she was having a stroke. *Id.* ¶ 6. Nurse Konnan recommended that Plaintiff be taken back to her cell and seen by Dr. O'Brien at a later time. *Id.* ¶ 9. Lacey's symptoms continued throughout the night while she waited to be seen by Dr. O'Brien, who did not provide any medical assessment of Lacey until at least the next morning. *Id.* ¶¶ 9–10. When Dr. O'Brien eventually examined her, Lacey again communicated her belief that she was having a stroke. *Id.* ¶¶ 10–11. After a 15 minute examination, Dr. O'Brien diagnosed Lacey with an ear infection and prescribed motion sickness medication for her. *Id.* ¶ 12. Lacey was taken off site to a hospital on August 17, 2016, where an MRI confirmed that she had experienced an untreated stroke. *Id.* ¶ 13.

As part of this litigation, Lacey's medical expert, Dr. Randal Wojciehoski, personally evaluated Lacey and reviewed her relevant medical records. Defs.' Proposed Findings of Fact (DPFOF) ¶ 1; *see also* ECF No. 35-1. Dr. Wojciehoski reviewed records from as far back as 2006 as part of his evaluation. ECF No. 25-1 at 3. Based on his examination of Lacey and his review of her medical records, Dr. Wojciehoski opined "to a reasonable degree of medical probability that the kind of treatment provided at the [TCI HSU] appears to be reasonable and customary and within the standard of care in addressing a stroke." *Id.* at 5. He noted that Lacey's medical records showed that she had presented to the HSU on August 8, 2016, with a three-day history of dizziness upon sudden awakening, symptoms consistent with an initial diagnosis of labyrinthitis but for which a stroke should be considered. *Id.* His statement of his opinion concludes with the following summary:

> It is my opinion to a reasonable degree of medical probability that the care and treatment by Dr. O'Brien was exemplary in nature. Her examination was completed on August 8, 2016, three days after the symptoms had occurred. An MRI was

3

> appropriately ordered in a delayed fashion. This is appropriate in making the diagnosis. Let me note that an aspirin was given initially, in addition to meclizine. Standard of care was met, and the treatment was reasonable and customary.
>
> It is my opinion to a reasonable degree of medical probability that Ms. Lacey received appropriate care and treatment with regard to the diagnosis, contrary to the belief of Ms. Lacey. There was absolutely no deviation in terms of standard of care. All of this is consistent with evidence-based medical literature. Regardless, the outcome would have been the same, as there was a three-day history of dizziness, and acute stroke care involving lytic therapy needs to occur within three hours of the initiation of symptoms. Significant deleterious effects of lytic therapy occur after three hours of administration. Thus, no further additional treatment or intervention would have altered the course of Ms. Lacey's condition. Antithrombotic treatment with aspirin is medically necessary and was addressed.

*Id.* at 5–6. Dr. Wojciehoski admits that he would have reviewed depositions of Nurse Konnan and Dr. O'Brien if he had access to them. PPFOF ¶ 16.

## ANALYSIS

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that she (1) was deprived of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person or persons acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Chatham v. Davis*, 839 F.3d 679, 684 (2016) (alterations in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A prison official may be liable for deliberate indifference only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To succeed on a deliberate indifference claim, a prisoner must prove that he "suffered from '(1) an objectively serious medical condition to which (2) a state official

4

was deliberately, that is subjectively, indifferent.'" *Id.* (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

To satisfy the subjective prong of the deliberate indifference standard, an inmate must "show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). This means that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837). Critically, "mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citing *Estelle*, 429 U.S. at 107); *see also Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016). "[T]he Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Although "a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference," a plaintiff succeeds in proving the second prong only if the prison official's conduct was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Edwards*, 478 F.3d at 831 (quoting *Snipes*, 95 F.3d at 592). Put differently:

> [D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.

*Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996).

5

Lacey's claim is not that prison officials failed to take action in the face of her serious medical need, and there is no dispute that she could not succeed on such a claim. A correctional officer recognized that her symptoms on August 10 warranted prompt intervention by HSU staff, Nurse Konnan quickly determined that evaluation by a doctor would be appropriate, and Dr. O'Brien subsequently conducted an examination and exercised her medical judgment in making a diagnosis. Neither Nurse Konnan nor Dr. O'Brien outright ignored Lacey's symptoms; indeed, each acted either to refer Lacey for evaluation by a higher level of medical professional or to provide treatment for her.

Absent proof that either defendant took no action in the face of her serious medical need, Lacey's claim depends entirely on her ability to prove that Nurse Konnan and Dr. O'Brien acted in a manner that so significantly departed from accepted professional standards that their decisions did not reflect the exercise of professional judgment. Yet after reviewing Lacey's medical records, examining her, and considering her reports about her August 10 stroke, Lacey's *own expert* has opined that the care and treatment she received at the HSU was not only "reasonable and customary" but also "exemplary in nature" reflecting "absolutely no deviation in terms of standard of care." ECF No. 35-1 at 5. This opinion from Lacey's expert that Nurse Konnan and Dr. O'Brien acted in a manner consistent with the standard of care and a reasonable exercise of professional judgment means that the undisputed evidence shows that Lacey cannot prove her case. *See Jones v. Lopez*, 21 F. App'x 479, 480–81 (7th Cir. 2001) ("Even Jones's own expert witness . . . testified that there was no medical malpractice and did not attribute the delay in Jones's diagnosis to deliberate indifference . . . . [I]t takes more than 'mere' medical malpractice to violate the Eighth Amendment, but logically it would be impossible to find that the doctor had engaged in behavior that could qualify

6

as deliberate indifference for Eighth Amendment purposes if her treatment did not even amount to malpractice. . . . The district court was entitled to infer from the testimony of the numerous experts to the effect that [a doctor's] treatment did not fall below any applicable standard of care that his treatment of Jones did not reflect deliberate indifference either." (citation omitted)); *see also Grund v. Murphy*, No. 17-3025, 2018 WL 2747543, at *3 (7th Cir. June 7, 2018) ("[The treating physician] maintains that his treatment of Grund was 'reasonable, appropriate, and within the standard of care' in these circumstances; the affidavit from the outside medical expert supports his position. . . . This evidence, along with [the doctor's] history of examining Grund and responding to her complaints, shows that he exercised professional judgment in determining how best to monitor her . . . .").

In opposition to the defendants' motion for summary judgment, Lacey offers only her own affidavit, as well as Dr. Wojciehoski's affidavit indicating that he would have considered depositions from Nurse Konnan and Dr. O'Brien, had they been available. ECF Nos. 42, 43. But the defendants do not dispute the majority of the proposed findings of fact supported by Lacey's affidavit, and Lacey's factual assertions regarding the events surrounding her stroke do not change the fact that she is not an expert capable of providing testimony regarding the reasonable exercise of professional medical judgment, a crucial component of her claim. Aside from these affidavits, Lacey presents no additional evidence as to whether the actions of Nurse Konnan and Dr. O'Brien reflected a departure from accepted professional standards of judgment. In light of the undisputed medical opinion evidence from Lacey's expert establishing that Nurse Konnan and Dr. O'Brien provided her with exemplary care entirely consistent with the professional standard of care, the court will grant the defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (ECF No. 32) is **GRANTED**.  This action is dismissed, and the Clerk is directed to enter judgment in favor of the defendants.

**SO ORDERED** this 31st day of July, 2018.

                                          s/ William C. Griesbach
                                          William C. Griesbach, Chief Judge
                                          United States District Court